UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES SANTIAGO, Individually and on Behalf of All Others Similarly Situated, as well as on Behalf of the General Public and Acting on the Public Interest, ) ) ) ) | | |
| Plaintiff, ) | CIVIL ACTION NO. | |
| ) | 3:08-CV-0167-G | |
| VS. ) | | |
| ) | **ECF** | |
| MICHAEL O. LEAVITT, ET AL., ) ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the plaintiff James Santiago ("Santiago") for class certification and of the defendants, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services; Kerry N. Weems, Acting Administrator, Centers for Medicare and Medicaid Services ("CMS"); James Randolph Farris, M.D. ("Farris"), Consortium Administrator for Quality Improvement and Survey & Certifications Operations, CMS; Bruce Hughes, President, Palmetto GBA, LLC ("Palmetto"); and Palmetto (collectively, the

"defendants"), to dismiss Santiago's claims against them. For the reasons stated below, Santiago's motion for class certification is denied, and the defendants' motion to dismiss is granted.

I. BACKGROUND

In April 2006, Santiago purchased Care Excellence Home Health, L.L.C. ("Care Excellence"), a home health agency which was participating in Medicare. Plaintiff's Original Complaint -- Class Action and Application for Injunctive Relief ("Complaint") ¶ 20. In June 2006, while CMS was processing Care Excellence's change of ownership, Santiago attended a Medicare education seminar sponsored by the Texas Department of Aging & Disability Services ("TDADS"). *Id.* ¶ 21. At the conference, a TDADS policy specialist instructed Santiago to discharge Care Excellence's patients pending the government's processing of the change of ownership. *Id.* Following this instruction, Santiago temporarily discharged Care Excellence's patients. *Id.*

On August 11, 2006, Santiago sold Care Excellence, along with its right to participate in Medicare, to Marlene Puente ("Puente"). *Id.* ¶ 24. This sale became effective on October 15, 2006. *Id.*

On May 23, 2007, Santiago alleges that Farris imposed a Medicare termination of Care Excellence, retroactive to August 23, 2006, under the voluntary procedures of 42 C.F.R. § 489.52 ("§ 489.52"). Complaint ¶ 22; *see also* Letter dated

March 15, 2007 ("March 15, 2007 Letter"), *attached to* Appendix in Support of Defendants' Motion to Dismiss Plaintiff's Complaint *as* Exhibit A. However, Care Excellence actually received notice of the termination of the agreement due to cessation of business in a letter, dated March 15, 2007, on CMS's letterhead signed by Ginger Odle, Chief of CMS's Survey and Certification Operations Branch. *See* March 15, 2007 Letter. CMS terminated Care Excellence's agreement and participation in Medicare because Care Excellence Outcomes and Assessment Information ("OASIS") data showed no patients between August 23, 2006 and February 2007. Complaint ¶ 23; Plaintiff's Brief on Motion to Certify Class ("Motion to Certify Class") at 1 and n.1. Santiago was not extended any appeal rights regarding this decision. Motion to Certify Class at 1. Santiago protested this determination. Complaint ¶ 25. On November 28, 2007, CMS's Dallas Regional Office notified Santiago that Care Excellence's agreement and participation in Medicare would not be reactivated. *Id*. ¶ 26.

Santiago filed this case on February 1, 2008. He claims that the defendants (1) violated his due process rights; (2) violated his provider appeal rights under 42 C.F.R. § 489.53; (3) and violated his rights pursuant to *Bivens v. Six Unknown Federal Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). *See generally* Complaint. Santiago also seeks injunctive and declaratory relief. *Id*. He asserts that without such relief, Care Excellence's "business will be virtually destroyed

and Plaintiff will be subjected to a lawsuit by Ms. Puente on the sale of the home health agency because of the loss of its right to participate in Medicare." *Id*. ¶ 48. Santiago asserts that the termination of Care Excellence's Medicare agreement was involuntary, not voluntary. Plaintiff's Amended Response to Defendants' Motions to Dismiss at 1-2.

On May 1, 2008, Santiago moved to certify, pursuant to Federal Rule of Civil Procedure 23, "a class consisting of home health agencies who seek to participate in the Medicare program as providers of services but whose participation has been terminated by CMS without extending appeal rights." Motion to Certify Class at 1.

On May 21, 2008, the defendants moved to dismiss Santiago's claims against them for lack of subject matter or, in the alternative, for failure to state a claim upon which relief can be granted. Defendants' Motion to Dismiss Plaintiff's Complaint and Supporting Brief ("Motion to Dismiss") at 1-2.

## II. ANALYSIS

### A. Statutory and Regulatory Background

Medicare, enacted in 1965 as Title XVIII of the Social Security Act, is a health insurance program for the elderly and disabled. 42 U.S.C. § 1395, *et seq*. CMS, an agency of the Department of Health and Human Services, administers the Medicare program. *Community Care, LLC v. Leavitt*, No. 07-30306, __ F.3d __, 2008 WL

2894700, *1 (5th Cir. July 29, 2008). Under § 489.52, a provider's agreement to provide Medicare services may be terminated as follows.

> 489.52 Termination by the provider.
>
> (a) Notice to CMS.
>
>> (1) A provider that wishes to terminate its agreement must send CMS written notice of its intent.
>>
>> (2) The notice may state the intended date of termination which must be the first day of a month.
>
> (b) Termination date.
>
>> (1) If the notice does not specify a date, or the date is not acceptable to CMS, CMS may set a date that will not be more than 6 months from the date on the provider's notice of intent.
>>
>> (2) CMS may accept a termination date that is less than 6 months after the date on the provider's notice if it determines that to do so would not unduly disrupt services to the community or otherwise interfere with the effective and efficient administration of the Medicare program.
>>
>> (3) A cessation of business is deemed to be a termination by the provider, effective with the date on which it stopped providing services to the community.
>
> * * *

*Id*.

B.  <u>Subject Matter Jurisdiction</u>

1.  *The Legal Standard*

The defendants assert two grounds for dismissal due to lack of subject matter jurisdiction:  (1) that the court lacks subject matter jurisdiction over this case because Santiago does not have standing to bring an action on behalf of Care Excellence, or (2) that the court lacks subject matter jurisdiction over this case unless the court extends a *Bivens* remedy within a Medicare context.  Motion to Dismiss at 3.  Alternatively, the defendants move to dismiss this case for failure to state a claim on which relief can be granted.

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter.  *See* FED. R. CIV. P. 12(b)(1).  A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim."  *Moran v. Kingdom of Saudia Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgras AF v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted).

On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413).

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const. Art. III § 2. Standing -- *i.e.*, the need to show that the plaintiff has a direct, personal stake in the outcome of the suit -- is an "essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990)) (internal quotation marks omitted); see also *Sommers Drug Stores Company Employment Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("'Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal.'") (quoting

*Safir v. Dole*, 718 F.2d 475, 481 (D.C. Cir. 1983), *cert. denied*, 476 U.S. 1206 (1984)); *University of South Alabama v. American Tobacco Company*, 168 F.3d 405, 410 (11th Cir. 1999) (noting that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction. See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)); see also *Corrigan*, 883 F.2d at 348 ("standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court.") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which

are decisive of subject matter jurisdiction. See *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)), *cert. denied*, 454 U.S. 897 (1981). The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision).

2. *Standing*

The defendants allege multiple reasons why Santiago lacks standing to bring this suit. The defendants maintain that Santiago cannot properly assert jurisdiction under § 1331 and *Bivens*. Motion to Dismiss at 11-12. The defendants further contend that Santiago lacks standing because he cannot allege an injury resulting from termination of Care Excellence's Medicare agreement because he was Care Excellence's *former* owner at the time CMS sent notification of the termination on March 15, 2007. *Id*. at 8. The defendants also maintain that Santiago's fear that Puente may file a lawsuit against him is speculative. *Id*. at 9. The defendants further

aver that Santiago lacks standing as he fails to allege an injury traceable to any unlawful conduct on the part of the defendants. *Id*. That is, Santiago discharged Care Excellence's patients on the advice of a representative of TDADS, a State of Texas employee, and not on the advice of any of the defendants. *Id*. Furthermore, according to the defendants, Santiago complains of actions against CMS and the United States government, and not actions by the defendants. *Id*. at 10. Santiago complains that CMS's decision to terminate Care Excellence's Medicare agreement was "taken under a clandestine policy to limit the number of home health agencies participating in Medicare . . . ." Complaint ¶ 41. The defendants maintain that Santiago fails to link their actions to any clandestine policy or conspiracy by the defendants, particularly as § 489.52 was promulgated in 1968, *i.e.*, before any of the individual defendants were in public service. Motion to Dismiss at 10. The defendants allege that any favorable decision by this court would not address Santiago's alleged injury since neither Care Excellence nor CMS are parties to this lawsuit and the court cannot compel CMS to restore Care Excellence's Medicare agreement. *Id*. at 11.

    Santiago admits that he dismissed Care Excellence's patients. This action prompted CMS to terminate Care Excellence's Medicare agreement. Santiago has not demonstrated an irreducible constitutional minimum of standing. As the party with the burden of proof, Santiago has not shown that he has standing to bring this

aver that Santiago lacks standing as he fails to allege an injury traceable to any unlawful conduct on the part of the defendants. *Id*. That is, Santiago discharged Care Excellence's patients on the advice of a representative of TDADS, a State of Texas employee, and not on the advice of any of the defendants. *Id*. Furthermore, according to the defendants, Santiago complains of actions against CMS and the United States government, and not actions by the defendants. *Id*. at 10. Santiago complains that CMS's decision to terminate Care Excellence's Medicare agreement was "taken under a clandestine policy to limit the number of home health agencies participating in Medicare . . . ." Complaint ¶ 41. The defendants maintain that Santiago fails to link their actions to any clandestine policy or conspiracy by the defendants, particularly as § 489.52 was promulgated in 1968, *i.e.*, before any of the individual defendants were in public service. Motion to Dismiss at 10. The defendants allege that any favorable decision by this court would not address Santiago's alleged injury since neither Care Excellence nor CMS are parties to this lawsuit and the court cannot compel CMS to restore Care Excellence's Medicare agreement. *Id*. at 11.

    Santiago admits that he dismissed Care Excellence's patients. This action prompted CMS to terminate Care Excellence's Medicare agreement. Santiago has not demonstrated an irreducible constitutional minimum of standing. As the party with the burden of proof, Santiago has not shown that he has standing to bring this

aver that Santiago lacks standing as he fails to allege an injury traceable to any unlawful conduct on the part of the defendants. *Id*. That is, Santiago discharged Care Excellence's patients on the advice of a representative of TDADS, a State of Texas employee, and not on the advice of any of the defendants. *Id*. Furthermore, according to the defendants, Santiago complains of actions against CMS and the United States government, and not actions by the defendants. *Id*. at 10. Santiago complains that CMS's decision to terminate Care Excellence's Medicare agreement was "taken under a clandestine policy to limit the number of home health agencies participating in Medicare . . . ." Complaint ¶ 41. The defendants maintain that Santiago fails to link their actions to any clandestine policy or conspiracy by the defendants, particularly as § 489.52 was promulgated in 1968, *i.e.*, before any of the individual defendants were in public service. Motion to Dismiss at 10. The defendants allege that any favorable decision by this court would not address Santiago's alleged injury since neither Care Excellence nor CMS are parties to this lawsuit and the court cannot compel CMS to restore Care Excellence's Medicare agreement. *Id*. at 11.

    Santiago admits that he dismissed Care Excellence's patients. This action prompted CMS to terminate Care Excellence's Medicare agreement. Santiago has not demonstrated an irreducible constitutional minimum of standing. As the party with the burden of proof, Santiago has not shown that he has standing to bring this

suit, and thus that the court has subject matter jurisdiction over this case. Santiago asserts, however, that this court has jurisdiction pursuant to § 1331 and *Bivens*. Complaint § 9. However, "*Bivens* does not provide an independent source of subject matter jurisdiction apart from § 1331." *Griego v. Leavitt*, No. 3:07-CV-1708-D, 2008 WL 2200052, *3 (N.D. Tex. May 16, 2008) (citation omitted).

### III. CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss Santiago's complaint against them is **GRANTED**.[*] Santiago's motion for class certification is **DENIED**. Judgment will be entered dismissing Santiago's claims for lack of subject matter jurisdiction.

**SO ORDERED**.

September 3, 2008.

_____
**A. JOE FISH
Senior United States District Judge**

---

[*] On the court's own motion, Santiago's complaint against the John Doe defendants is also **DISMISSED**.